**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| STONEBRIDGE FINANCIAL CORP., ) | |
| ) | Case no. 15-14353 (ELF) |
| Debtor. ) | |
| ) | |

**AFFIDAVIT OF JEFFREY R. MANNING IN SUPPORT OF**
**MOTION FOR APPROVING SALE OF 100 PERCENT OF THE OUTSTANDING**
**EQUITY IN STONEBRIDGE BANK FREE AND CLEAR OF LIENS, CLAIMS,**
**ENCUMBRANCES AND OTHER INTERESTS, AND GRANTING RELATED RELIEF**

I, Jeffrey R. Manning, being duly sworn, state and affirm as follows:

1. Unless otherwise stated herein, I have personal knowledge of the facts set forth in this Affidavit.

2. I submit this Affidavit in support of the Motion for Entry of Order Establishing Bidding and Sale Procedures, Approving the Notice and Sale of Stonebridge Bank, and Granting Related Relief (the "**Motion**") (Dkt. No. 40), filed by Stonebridge Financial Corp., the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case.

3. I am a Managing Director of CohnReznick Capital Market Securities, LLC ("**CRCMS**"), a limited liability company, investment bank, and FINRA member firm, with offices located at 500 East Pratt Street, Baltimore, MD 21202. To provide investment banking services as required by SEC and FINRA Rule 1032(a), I have qualified as a General Securities Representative (S7), an Investment Banking Representative (S79), and as a General Securities Principal (S24) under FINRA licenses. I also hold the Certified Turnaround Professional designation. CRCMS is the wholly-owned investment banking subsidiary of CohnReznick, LLP, ("**CR**").

4. By the Motion, the Debtor requested entry of an order by this United States

83477927.1

Bankruptcy Court for the Eastern District of Pennsylvania (the "**Court**") pursuant to Sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ("**Bankruptcy Code**") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"): (I) approving proposed auction and bid procedures (the "**Bidding Procedures**") as set forth in the Motion, and (II) scheduling an auction (the "**Auction**") and final sale hearing ("**Sale Hearing**") and approving the form and manner of the notice of the Auction and Sale Hearing; and (III) authorizing the sale of the stock (the "**Bank Equity**") of Stonebridge Bank (the "**Bank**") free and clear of liens, claims, encumbrances, and interests subject to higher and/or better offers; and granting related relief.

5.  As set forth in greater detail in the Motion, a group of investors consisting of certain members of the Debtor's board of directors agreed to act as a stalking horse bidder (the "**Stalking Horse Group**"). The Stalking Horse Group submitted a bid for the Bank Equity with a purchase price of $550,000 (the "**Stalking Horse Bid**").

6.  On August 24, 2015, the Court entered the Order Approving (I) Bid and Sales Procedures; (II) Form and Manner of the Notice of Sale of Stonebridge Bank; and (III) Scheduling an Auction and Sale Hearing (the "**Bid Procedures Order**") (Dkt. No. 64).

7.  The Debtor, in consultation with Wilmington Trust Company, as indenture trustee ("**Wilmington Trust**"), retained CRCMS to assist the Debtor in marketing and selling the Bank Equity. The Court approved the Debtor's request to retain CRCMS as investment banker pursuant to the order entered September 18, 2015 (Dkt. #75).

A. MARKETING EFFORTS

8.  Prior to CRCMS retention and pursuant to the Bid Procedures Order, on August 27, 2015, notice of the auction was published in the Wall Street Journal and the Legal

Intelligencer. See Proof of Publication in the Wall Street Journal and Legal Intelligencer of the Notice of Auction of Debtor's Sole Asset and Bid and Sales Procedures, September 29, 2015 (Dkt. No. 77).

9. CRCMS pursued a sale transaction in accordance with the Bid Procedures Order. Following the Court's approval of CRCMS's retention, CRMCS prepared a one-page Fact Sheet on the Bank and launched the Fact Sheet into the Intralinks Dealnexus® global network, exposing the transaction to over two million individual users. Working with the senior management of the Debtor and the Bank, CRCMS established and populated on online data room, materially expanding the due diligence materials available to third parties. In addition, with a focus on previously interested parties, larger regional banks in the mid-Atlantic, and regional and community banks geographically close to Stonebridge, CRCMS identified and contacted a universe of approximately 185 potential buyers.

10. CRCMS delivered approximately forty one (41) Non-Disclosure Agreements (NDAs) to interested purchasers. Eleven (11) NDAs were ultimately executed by parties who then conducted due diligence by accessing the information in the online data room and, in some cases, on-site visits at the Bank and meetings with the Bank's personnel.

11. CRCMS provided the Debtor and Wilmington Trust with weekly written status reports that contained updates to the sale process and discussions with potential bidders.

12. In consultation with CRCMS and Wilmington Trust, the Debtor postponed the milestones and deadlines set forth in the Bid Procedures Order to provide additional time to market the Bank Equity and increase the likelihood of potential bidders at the Auction. See Notice of Rescheduling of Auction Milestones and Sale Hearing, October 13, 2015 (Dkt. No. 81).

13. Pursuant to the bid procedures approved by the Court in the Bid Procedures Order, in order to be a "qualified bid", any bid submitted to the Debtor would need to include, among other things, (a) a black line comparison of the stock purchase agreement of any such bid against the Stalking Horse Bid's stock purchase agreement, (b) evidence of the bidder's financial ability to consummate the purchase after the Court enters an order approving the sale, and (c) a good faith deposit equal to 10% of the bid amount.

14. Gordon Denlinger, Norman Hahn, and Anthony Hahn (collectively, the "**Proposed Purchaser**") submitted a bid prior to the November 2, 2015 bid deadline.

15. The Proposed Purchaser's bid was accompanied by (a) a proposed stock purchase agreement with a black line against the Stalking Horse Group's stock purchase agreement, (b) a good faith deposit of $57,000 (the "**Deposit**"), equal to 10% of the proposed purchase price ($570,000), and (c) financial information evidencing the Proposed Purchaser's ability to consummate the sale of the Bank Equity (the "**Financial Information**").

16. CRCMS believes that the Financial Information and the Deposit, among other things, sufficiently demonstrate the Proposed Purchasers' ability and willingness to close.

17. The Debtor, in consultation with CRCMS and Wilmington Trust, determined the bid submitted by the Proposed Purchaser was a "qualified bid" under the Bid Procedures Order.

### B. The Auction

18. In preparation for the Auction, CRCMS prepared a "Scorecard" summarizing salient terms of each qualified bid. The Scorecard attempted to aid transparency by analyzing different bids to bring each proposal down to a projected Net Consideration from the Transaction.

19. The Auction was conducted on November 5, 2015 at 9:34 am ET at the offices of

Drinker Biddle & Reath LLP, One Logan Square, Ste. 2000 Philadelphia, PA 19103-6996. The Proposed Purchasers and the Stalking Horse Group (each a "**Bidder**" and collectively, the "**Bidders**") participated in the Auction.

20. The Auction began with a discussion of certain procedural clarifications and an opportunity for each Bidder to put material into the official record. Following those initial introductions, Debtor's counsel, Wilmington Trust's counsel, and I met with each of the Bidders to discuss each Bidder's plan to recapitalize the Bank and to clarify certain terms and conditions in documentation. The content of those discussions were shared with representatives from Wilmington Trust and the Debtor, including the Chairman of the Debtor's board of directors who was not a member of the Stalking Horse Group.

21. The Debtor, in consultation with CRCMS and Wilmington Trust, determined that the bid of the Proposed Purchasers was the highest and best bid.

22. Based upon my 30+ years of experience with distressed asset sales, it is my opinion that (a) the marketing process and Auction conducted by CRCMS and the Debtor, which included extensive consultation with Wilmington Trust, maximized the opportunity for the Debtor to obtain the highest and best offer for the Bank Equity; (b) the Proposed Purchaser's offer of $570,000 is the highest and best offer for the Bank Equity and was the product of arm's-length and good faith negotiations with the Debtor; (c) the purchase price of $570,000 represents fair value for the Bank Equity; and (d) to the best of my knowledge there is no existing relationship between the Proposed Purchasers, CRCMS, and the Debtor that would affect any of the foregoing.

Dated: November 5, 2015

CohnReznick Capital Market Securities LLC

By: _____

Jeffrey R. Manning, Managing Director

Subscribed and sworn to before me this 5 day of November, 2015

_____
Notary Public

DIVYESH PATEL
NOTARY PUBLIC - MARYLAND
Baltimore County
My Commission Expires Jan. 13, 2018

6