IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| STONEBRIDGE FINANCIAL CORP., | ) |
| | ) Case No. 15-14353 (ELF) |
| Debtor. | ) |
| | ) |

**ORDER UNDER 11 U.S.C. §§ 105(A) AND 363
AND FED. R. BANKR. P. 2002 AND 6004 AND 9014 (A) AUTHORIZING SALE OF
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AND (B) GRANTING
RELATED RELIEF**

This matter having come before this United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Court**") upon the motion (the "**Sale Motion**")[1] [Dkt. No. 40] of Stonebridge Financial Corp. (the "**Debtor**"), for an order *inter alia*, pursuant to Sections 105(a) and 363 of Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code"**) and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving the sale of all of the Debtor's stock in Stonebridge Bank (the "**Bank Stock**"), and the Court having considered (i) the Sale Motion, and (ii) the objections, if any, thereto; and based upon the record in this case, the Procedures Order (defined below) and the hearing on the Sale Motion and after due deliberation; and good cause appearing therefore;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

      A.  This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. §157(b)(2).

---

[1]  Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them in the Sale Motion.

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

B.  Proper, timely, adequate and sufficient notice of the Sale Motion, the hearing on the Sale Motion and the continuance of the originally scheduled date for the hearing on the Sale Motion to November 9, 2015 has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 9014 and the order of this Court dated August 24, 2015 (the "**Procedures Order**") [Dkt. No. 65], and no other or further notice of the Sale Motion, the hearing on the Sale Motion, or of the entry of this Order is required.[3]

C.  Pursuant to the bidding procedures, two parties submitted bids for the purchase of the Bank Stock and an auction was conducted on November 5, 2015.

D.  The bidding procedures established pursuant to the Procedures Order afforded a full, fair and reasonable opportunity for any entity to make an offer to purchase the Bank Stock which was higher and better than the offer documented in that certain Stock Purchase Agreement (the "**Stock Purchase Agreement**") by and between the Debtor, as Seller, and Gordon Denlinger, Norman Hahn and Anthony Hahn, (the "**Purchasers**") as Purchasers, a copy of which was made part of the record at the hearing on the Sale Motion, and no such higher or better offer has been made.

E.  All interested persons and entities have been afforded a full, fair, and reasonable opportunity to conduct due diligence investigations, submit bids and to submit higher and otherwise better bids to purchase the Bank Stock, and object or be heard with respect to the Sale Motion and the relief granted by this Order.

F.  The Debtor has full power and authority to execute the Stock Purchase Agreement and all other documents contemplated thereby and consummate the transactions contemplated

2

therein, including the sale of the Bank Stock, and no consents or approvals, other than the approval of this Court and the Regulatory Approvals (as defined in the Stock Purchase Agreement) are required for the Debtor to consummate such transactions.

G.  The Debtor, in consultation with Wilmington Trust Company and CohnReznick Capital Market Securities LLC, has demonstrated that it is an exercise of its sound business judgment to sell the Bank Stock to the Purchasers in connection with the consummation of the Stock Purchase Agreement, and that approval of the Stock Purchase Agreement and sale of the Bank Stock pursuant thereto is in the best interests of the Debtor, its estate, and its creditors.

H.  The sale of the Bank Stock (the "**Sale**") must be completed immediately in order to preserve its value and, as a result, good and sufficient business justification exists for the immediate sale of the Bank Stock outside of a plan of reorganization.

I.  No insiders of the Debtor are receiving or retaining any benefit, property or payments in connection with the sale of the Bank Stock except to the extent (i) such insiders have allowed claims against the Debtor and, as a result, may participate in a distribution of sale proceeds, (ii) such insiders are to be employed by the Purchasers following closing, or (iii) otherwise disclosed on the record at the hearing on the Sale Motion.

J.  The Stock Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Purchasers without collusion, in good faith, and as a result of arm's length bargaining.  The Purchasers are good faith purchasers under section 363(m) of the Bankruptcy Code and, as such, are entitled to the protections afforded thereby.  Neither the Debtor nor the

---

[3] With respect to entities whose identities are not known or reasonably ascertainable by the Debtor, notice of the Auction was sufficient and reasonably calculated under the circumstances to, and did, provide adequate notice to such entities.

3

Purchasers have engaged in any conduct that would cause or permit a sale pursuant to the Stock Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

K.  In the absence of a stay pending appeal, the Purchasers will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Stock Purchase Agreement at any time after the entry of this Order, provided the Purchasers shall not be obligated to close until all applicable conditions to closing under the Stock Purchase Agreement (including, but not limited to, regulatory approval) have been satisfied or waived as provided in such agreement.

L.  The Debtor has demonstrated good, sufficient and sound business reasons and compelling circumstances to enter into the Stock Purchase Agreement and to consummate the sale transaction, and such actions are appropriate and reasonable exercises of the Debtor's business judgment and in the best interests of the Debtor, the estate and the creditors, and other parties in interest.

M.  The consideration provided by the Purchasers for the Bank Stock pursuant to the Stock Purchase Agreement constitutes the best and highest offer for the Bank Stock and reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, and the District of Columbia.

N.  The Debtor's determination that the Stock Purchase Agreement constitutes the highest and best offer for the Bank Stock constitutes a valid and sound exercise of the Debtor's business judgment.

O.  The terms and conditions of the Stock Purchase Agreement are fair and reasonable, and the sale is in the best interest of the Debtor, the estate and creditors, and all other parties in interest.

P.  The Debtor may sell the Bank Stock free and clear of all (i) mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances and claims (as that term is defined in the Bankruptcy Code), including those in favor of Wilmington Trust Company,  (ii) rights or options to effect any forfeiture, modification, repurchase, or termination of the Debtor's or the Purchaser's interest in the Bank Stock, regardless whether such are "claims" as that term is defined in the Bankruptcy Code, (iii) claims in respect of taxes, and (iv) easements, restrictions, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, regardless whether such are "claims" as that term is defined in the Bankruptcy Code, (collectively, items (i) to (iv) above are referred to as "**Interests**"), because each entity with an Interest in any of the Bank Stock has consented to such sale, is deemed to have consented to such sale or could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Interest.  For the avoidance of doubt, nothing in this paragraph P is intended to or shall effect or eliminate regulatory oversight of the Debtor or Stonebridge Bank or the regulatory approval required prior to the closing of the Sale.

Q.  The Debtor has good title to the Bank Stock and, accordingly, the transfer of the Bank Stock to the Purchasers pursuant to the Stock Purchase Agreement will be a legal, valid, and effective transfer of the Bank Stock.

NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED THAT:

1. The Sale Motion, and the relief sought therein is granted, in all respects.

5

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3. The Stock Purchase Agreement, and all of the terms and conditions thereof, are hereby approved.

4. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to take all actions necessary to consummate the sale of the Bank Stock to the Purchasers pursuant to and in accordance with the terms and conditions of the Stock Purchase Agreement.

5. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the closing under the Stock Purchase Agreement, the Bank Stock shall be free and clear of all Interests, with all such divested Interests to attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect (if any) which they now have against the Bank Stock, subject to any claims and defenses the Debtor may possess with respect thereto.

6. Transfer of the Bank Stock will not subject the Purchasers to any liability for claims against the Debtor or the Debtor's predecessors or affiliates of any kind or character, whether known or unknown, now existing or hereafter occurring, whether fixed or contingent, based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor, vicarious or transferee liability.

7. As of the Closing Date (as defined in the Stock Purchase Agreement), each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Bank Stock as such Interests may have been recorded or may otherwise exist.

8. If any person or entity that has filed financing statements or other documents or agreements evidencing Interests in the Bank Stock shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction and releases of all such Interests, the Debtor and/or the Purchasers are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Bank Stock.  The foregoing notwithstanding, the provision of this Order authorizing the sale of the Bank Stock free and clear of all Interests shall be self-executing, and notwithstanding the failure of the Debtor, the Purchasers or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or in the Stock Purchase Agreement with respect to the sale of the Bank Stock, all Interests in or against the Bank Stock shall be deemed divested on the Closing Date.

9. The Debtor is hereby directed to surrender possession of the Bank Stock to the Purchasers on the Closing Date.

10. As of the Closing Date, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the transactions contemplated by the Stock Purchase Agreement.

11. Subject to further Court order and the terms of the Stock Purchase Agreement, the Debtor is authorized to and shall take appropriate measures to maintain and preserve, until the earliest of (i) consummation of any plan for the Debtor, (ii) conversion of the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code, and (iii) dismissal of the Debtor's bankruptcy case, the books, records, and any other documentation, including tapes or other audio

7

or digital recordings and data in, or retrievable from, computers or servers relating to or reflecting the records held by the Debtor or its affiliates relating to the Debtor's business.

12. This Court shall retain jurisdiction (a) to enforce and implement the terms and provisions of the Stock Purchase Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith, (b) to resolve any disputes arising under or related to the Stock Purchase Agreement, and (c) to interpret, implement and enforce the provisions of this Order.

13. Nothing contained in any plan confirmed in the Debtor's Chapter 11 Case, any order confirming any such plan, any order converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or any order dismissing the Debtor's bankruptcy case, shall conflict with or derogate from the provisions of the Stock Purchase Agreement or this Order.

14. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any plan of reorganization for the Debtor, converting the Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code or dismissing the Debtor's case.

15. The terms and provisions of the Stock Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, its creditors, the Purchasers and their affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting a claim against or Interest in the Debtor's estate and/or the Bank Stock.

16. The Stock Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing

11/05/2015 SL1 1390310v2 109949.00001
83480757.2

signed by both parties, and in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.

17. The failure specifically to include any particular provision of the Stock Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stock Purchase Agreement be authorized and approved in its entirety.

18. Notwithstanding the provisions of Fed. R. Bankr. P. 6004(h) and 7062, this Order shall be effective and enforceable immediately upon entry.

Dated: __Nov. 9, 2015__

_____
THE HONORABLE ERIC L. FRANK
UNITED STATES BANKRUPTCY JUDGE

11/05/2015 SL1 1390310v2 109949.00001
83480757.2